O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENE NORIEGA,<br><br>              Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>              Defendant. | Case No. EDCV 16-01082-KES<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Rene Noriega ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying her application for Social Security Disability Insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons discussed below, the ALJ's decision is AFFIRMED.

## I.

## BACKGROUND

Plaintiff applied for DIB on October 10, 2012, and SSI on October 24, 2012, alleging disability commencing April 1, 2007. Administrative Record ("AR") 190-202. An ALJ conducted a hearing on September 23, 2014, at which Plaintiff, who was represented by an attorney, appeared and testified. AR 35-67.

On January 23, 2015, the ALJ issued a written decision denying Plaintiff's request for benefits. AR 16-33. The ALJ found that Plaintiff had the following severe impairments: status post two cervical fusion procedures, new onset seizures, and migraine headaches. AR 21. Notwithstanding her impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: can lift ten pounds occasionally and five pounds frequently; never climb ladders, ropes, and scaffolds; occasionally balance, kneel, crouch, and reach overhead with both arms; occasionally perform bilateral handling; and avoid moderate exposure to cold, excessive vibrations, and work hazards such as moving machinery. AR 24. Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could return to her past relevant work as a burial needs sales person. AR 27. Therefore, the ALJ concluded that Plaintiff is not disabled. AR 28.

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

In determining a claimant's RFC, the ALJ should consider those limitations for which there is support in the record, but the ALJ need not consider properly rejected evidence of subjective complaints. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."); Batson v. Comm'r of SSA, 359 F.3d 1190, 1197 (9th Cir. 2004) ("The ALJ was not required to incorporate evidence from the opinions of Batson's treating physicians, which were permissibly discounted.").

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate non-disability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

## III.

## ISSUES PRESENTED

Issue No. 1: Whether the ALJ properly considered and evaluated the opinion of Plaintiff's treating physician, Dr. Travis H. Calvin, Jr., M.D.[1];

Issue No. 2: Whether the ALJ properly considered Plaintiff's pain and symptom testimony.

Joint Stipulation ("JS") at 4.

---

[1] The ALJ and the parties often refer interchangeably to "Dr. Calvin" and "Dr. Travis." The Court's review of the record demonstrates that these refer to the same person. The Court will refer the treating physician as Dr. Calvin in this opinion.

1

## IV.

2

## DISCUSSION

3  **A.**   **The ALJ Gave a Specific and Legitimate Reason for Discounting Dr.**

4  **Calvin's Opinion that is Supported by Substantial Evidence.**

5        Plaintiff contends that the ALJ did not give any specific and legitimate

6  reasons supported by substantial evidence to reject Dr. Calvin's opinion regarding

7  Plaintiff's functional limitations. JS at 4-10. The Court disagrees.

8        **1.  Applicable Law.**

9        Three types of physicians may offer opinions in Social Security cases:

10  (1) those who directly treated the plaintiff, (2) those who examined but did not treat

11  the plaintiff, and (3) those who did neither, but reviewed the plaintiff's medical

12  records. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's

13  opinion is generally entitled to more weight than that of an examining physician,

14  and an examining physician's opinion is generally entitled to more weight than that

15  of a non-examining physician. Id. Thus, the ALJ must give specific and

16  legitimate reasons for rejecting a treating physician's opinion in favor of a non-

17  treating physician's contradictory opinion or an examining physician's opinion

18  in favor of a non-examining physician's opinion. Orn v. Astrue, 495 F.3d 625,

19  632 (9th Cir. 2007) (citing Reddick, 157 F.3d at 725); Lester, 81 F.3d at 830-31

20  (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)).

21        The weight given a physician's opinion depends on whether it is consistent

22  with the record and accompanied by adequate explanation, the nature and extent of

23  the treatment relationship, and the doctor's specialty, among other things. 20 C.F.R.

24  § 416.927(c)(3)-(6); Orn, 495 F.3d at 631. Medical opinions that are inadequately

25  explained or lack supporting clinical or laboratory findings are entitled to less

26  weight. See Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (holding that

27  ALJ properly rejected physician's determination where it was "conclusory and

28  unsubstantiated by relevant medical documentation"); Crane v. Shalala, 76 F.3d

4

251, 253 (9th Cir. 1996) (ALJ permissibly rejected "check-off reports that did not contain any explanation of the bases of their conclusions").

The ALJ is responsible for resolving conflicts in the medical evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). In doing so, the ALJ is always permitted to employ "ordinary techniques" for evaluating credibility, including inconsistencies in a witness's testimony. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). Thus, internal inconsistencies are a valid reason to accord less weight to a medical opinion. See Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (upholding inconsistency between a treating physician's opinions and his own treatment notes as a reason to discount his opinions); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of a medical opinion that was internally inconsistent).

## 2. Summary of Dr. Calvin's Relevant Opinion.

Dr. Calvin was Plaintiff's treating physician from September 2005 through at least May 2014, and he performed two spinal fusion surgeries on her back. See AR 483, 557-82, 590-98, 602-611, 623, 710-17, 720-27, 740-45, 884-886, 889 (treatment notes); AR 571 (first surgery in May 2007); AR 787-89 (second surgery in December 2013). On February 21, 2014, Dr. Calvin completed a three-page form providing his opinions regarding Plaintiff's functional limitations. AR 880. Dr. Calvin identified Plaintiff's symptoms as neck pain, shoulder pain, and swallowing difficulty. His clinical findings were fusion of neck C4-C7, myopathy[2], and radiculopathy[3]. Id. Dr. Calvin's restrictive assessment opined that Plaintiff could

---

[2] Myopathy is a disease of muscle tissue, resulting in muscular weakness. See https://en.wikipedia.org/wiki/Myopathy.

[3] Radiculopathy refers to a set of conditions in which one or more nerves are affected and do not work properly. See https://en.wikipedia.org/wiki/Radiculopathy.

walk only one and a half city blocks without rest or severe pain; sit for fifteen minutes and stand for fifteen minutes at a time; and sit, stand, or walk less than two hours in an eight-hour workday. AR 880-81. He opined that Plaintiff would have to take unscheduled ten to fifteen minute breaks to lie down every thirty minutes, meaning she would be required to lie down for approximately three hours of every work day. AR 881. He further opined that Plaintiff could lift and carry less than ten pounds frequently and ten pounds occasionally, could rarely kneel and never twist, stoop, crouch, climb stairs or ladders, and balance. Id. Plaintiff could perform handling rarely, fingering and reaching in front of her body occasionally, and reaching overhead never. AR 882. Plaintiff would have to be "off-task" (where symptoms would be severe enough to interfere with attention and concentration needed to perform even simple tasks) twenty-five percent or more of the time, and would have to be absent from work due to impairments for 2 days[4] on average. Id.

### 3. The ALJ's Treatment of Dr. Calvin's Opinion.

The ALJ summarized the following selections from the medical evidence:

- September 2005: Plaintiff reported that a fourteen-pound cabinet door fell on her, causing her injury to her neck. AR 25, citing AR 583-84.

- April 2007: Plaintiff's alleged disability onset date. AR 21, 190.

- May 2007: Dr. Calvin performed cervical fusion surgery. Id., citing AR 571. An MRI showed "excellent alignment" of the cervical fusion. The ALJ determined that "these records indicate the surgery was successful and little objective evidence to support the claimant's allegations." AR 25, citing AR 579.

- After her first surgery, Plaintiff "continued to complain of pain in her neck and left arm and she was administered nerve block injections by Dr.

---

[4] The form does not specify the time period, but the Court assumes that Dr. Calvin opined that Plaintiff would be absent 2 days per month on average.

Calvin." Id., citing AR 589-621.

- June 2010: MRI showed slight disc narrowing and minor disc bulge in C4-5. No cord contact, stenosis[5] or foraminal narrowing. Id., citing 667.

- July 2010: Plaintiff reported that injections were not working and she had pain in her left arm. Examination "found no atrophy but her hand was cold and there was decreased reflex, motor, and grip." Id., citing AR 622-673.[6]

- Plaintiff was hospitalized multiple times for acute conditions including chest pain, shortness of breath, seizure, headache, anxiety, confusion, and neck pain between November 2011 and July 2012. [7]  The ALJ noted that on each occasion she was stabilized and released with no mention of physical or mental limitations or restrictions. Id., citing AR 925, 959, 964, 1067, 1094, 1155, 1186, 1237, 1272, 1306, 1307, 1341, 1392, 1486, 1508, 1639, 1650.

- May 2013: MRI showed a disc bulge and mild kyphosis[8] at C3-4 with no stenosis or narrowing, stable fusion at C5-7, and significant stenosis at C5-T1. Id., citing AR 709-27.

---

[5] Stenosis is an abnormal narrowing in a blood vessel or other tubular organ or structure. See https://en.wikipedia.org/wiki/Stenosis.

[6] The citation the ALJ provides contains multiple treatment notes from multiple dates in 2010.

[7] The records the ALJ cites provide medical evidence of multiple hospitalizations for acute conditions spanning from November 2011 to July **2014**, not 2012. Given the fact that this note was place in a chronological account between 2010 and 2013 evidence, it is unclear whether its placement was simply based on the starting date or a misinterpretation of the evidence.

[8] Kyphosis is an abnormal rounding of the spine. See https://en.wikipedia.org/wiki/Kyphosis.

- December 31, 2013: Dr. Calvin performed a second cervical fusion surgery on Plaintiff. Id., citing AR 787. Post-surgery imaging showed good position. Id., citing AR 783.

- February 2014: Dr. Calvin provided his opinion regarding Plaintiff's functional limitations. AR 26, citing AR 880-882.

- September 2014: EMG showed mild chronic denervation in the upper extremities in all muscles tested. All other results were normal. Id., citing AR 1786. An MRI showed mild to moderate facet changes at C3-4 with mild grade 1 anterolisthesis[9] of C3 over C4. There was no disc protrusion or extrusion, spinal stenosis, or neural foraminal narrowing. At C4-5 and C6-7 there were post-surgical changes but no stenosis or foraminal narrowing. Id., citing AR 1809-12.

The ALJ then summarized Dr. Calvin's functional limitation assessment and gave three reasons for assigning Dr. Calvin's opinions little weight: (1) the assessment appears to reflect the claimant's subjective allegations and not Dr. Calvin's objective exam findings; (2) findings of the consultative examiner[s][10] do not support these conclusions; and (3) the imaging evidence does not support these conclusions. AR 26.

The ALJ gave great weight to the opinion of consultative examiner and orthopedic surgeon Warren David Yu, M.D., who examined Plaintiff on January 19, 2009. AR 25. Dr. Yu diagnosed Plaintiff with mild degeneration at C4-5 and

---

[9] A spine condition in which the upper vertebral body slips forward onto the vertebra below. The amount of slippage is graded on a scale from 1 to 4. See www.spine-health.com/glossary/anterolisthesis.

[10] The ALJ only discusses the opinion of one consultative examiner, Warren David Yu, in his decision. See AR 25. The ALJ also discusses the functional limitation assessments of two non-examining physicians who reviewed Plaintiff's records, but did not cite those opinions to discount Dr. Calvin's conclusions.

residual complex regional pain syndrome, type II, left upper extremity. AR 588. He observed hypersensitivity and decreased motor and grip strength in her left arm and hand. He also observed limited range of motion of Plaintiff's cervical spine with moderate paracervical muscle tenderness, and normal thoracolumbar range of motion.[11] AR 586. Examination of the upper extremities revealed some discoloration in the distal left upper extremity with patchy redness, but range of motion in the shoulders, elbows, wrists, and hands were within normal limits. Id. Grip strength was forty-five pounds with the right hand and five pounds with the left. AR 587. Motor strength was slightly weak throughout the left upper extremity, and otherwise normal throughout. Id. Dr. Yu noted hypersensitivity throughout Plaintiff's left upper extremity, more prominent in the upper arm, and patchy numbness throughout the left upper extremity. Id. Otherwise, sensation in the upper and lower extremities was grossly within normal limits. Id. Reflexes were normal, and no clonus or Hoffman sign[12] was noted. Id.

Based on his examination and diagnoses, Dr. Yu opined that Plaintiff had the functional capacity for light work with frequent use of the right upper extremity for pushing, pulling, fine finger motor movements, handling, and fingering, and only occasional use of the left upper extremity. AR 588. He opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently. Id. He further noted that Plaintiff could stand, walk, and sit for six hours in an eight-hour

---

[11] Cervical spine range of motion is measured at the neck region of the spine, which consists of seven vertebrae (C1 through C7). Thoracolumbar range of motion is measured at the mid-and lower back, known as the thoracic and lumbar regions of the spine (including vertebrae T1 through T12 and L1 through L5). See http://www.coloradospineinstitute.com/subject.php?pn=anatomy-spinalregions14.

[12] A Hoffman's response is a finding elicited by a reflex test in one's finger flexor, which verifies the presence or absence of problems in the corticospinal tract. See https://en.wikipedia.org/wiki/Hoffmann%27s_reflex.

9

workday. Id. The ALJ gave great weight to Dr. Yu's assessment because "it is consistent with the record and Dr. Yu's exam finding, which indicate less severe neck impairments overall and increased symptoms only in the left arm and hand." AR 25.

### 4. Analysis.

Dr. Calvin was Plaintiff's treating physician for over five years, and he performed two spinal fusion surgeries on her back. Under Social Security regulations, the length and extent of this treating relationship mean that his opinion is generally entitled to greater weight than the opinion of a non-treating physician. See 20 C.F.R. § 404.1527(c)(2)(i)-(ii); Orn, 495 F.3d at 631. Because Dr. Calvin's 2014 opinion was contradicted by the 2013 opinions of reviewing doctors Dr. Weeks and Dr. Holmes, who assigned less restrictive functional assessments[13], see AR 94-96, 126-129, the ALJ was required to provide "'specific and legitimate reasons' supported by substantial evidence in the record" for rejecting Dr. Calvin's opinion. Orn, 495 F.3d at 632 (quoting Lester, 81 F.3d at 830). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

a.   Dr. Calvin's assessment is inconsistent with imaging evidence.

One reason the ALJ gave for discounting Dr. Calvin's 2014 opinion was that the imaging studies from around the same time period did not support his extremely restrictive functional assessment. AR 26. Imaging results following Plaintiff's December 2013 surgery showed good position of the C4-C6 vertebra. AR 785. An

---

[13] After reviewing Plaintiff's medical records, both doctors opined that Plaintiff could lift and/or carry 20 pounds occasionally, and 10 pounds frequently; occasionally reach overhead bilaterally; climb ramps/stairs and balance frequently; and stoop, kneel, crouch, and crawl occasionally. AR 96-97, 126-27.

EMG test from September 2014 found normal results except for mild chronic denervation in all muscles tested in the upper extremities. AR 1786. An MRI on September 28, 2014 showed only mild to moderate facet changes at C3-4, and only mild grade 1 anterolisthesis[14] of C3 over C4. There was no disc protrusion or extrusion, spinal stenosis, or neural foraminal narrowing. At C4-7 there were post-surgical changes but no stenosis or foraminal narrowing. The ALJ interpreted these studies as indicating improvement since Plaintiff's December 2013 surgery. AR 26.

Substantial evidence supports the ALJ's determination. Dr. Calvin opined that Plaintiff could *never* raise her arms overhead, twist, bend, crouch/squat, climb ladders or stairs, or balance. He also assessed the rather restrictive limitation that Plaintiff could only sit or stand/walk for less than 2 hours a day, and that she would need to take fifteen minute breaks to lie down every thirty minutes. AR 881. The relatively mild findings from the imaging studies conducted after Plaintiff's second surgery do not support Dr. Calvin's extreme limitations.

> b.      The ALJ's determination that Dr. Calvin's assessment reflects Plaintiff's subjective complaints and not his objective findings is not supported by substantial evidence.

The ALJ also gave Dr. Calvin's opinion little weight because it appeared to reflect only Plaintiff's subjective complaints, not his objective exam findings. AR 26. However, the ALJ failed to indicate which of Dr. Calvin's functional limitation assessments lacked objective support.

Dr. Calvin examined Plaintiff on a number of occasions from 2007 to 2014. In his voluminous clinical findings, none of which the ALJ discussed, Dr. Calvin

---

[14] Anterolisthesis is a spine condition in which the upper vertebral body slips forward onto the vertebra below. The amount of slippage is graded on a scale of 1 to 4. See https://www.cedars-sinai.edu/Patients/Health-Conditions/Anterolisthesis.Aspx.

noted positive Romberg's[15] (AR 557) and Hoffman's tests (AR 605, 712, 741), weakness in the left upper extremities (AR 557, 602), limited range of motion in the neck (AR 571, 606, 623, 592, 710, 712, 722, 741), definite neck pain (AR 482, 590, 592, 602), hypalgesia (decreased sensitivity) of the left arm (AR 592, 605, 712, 722), a positive shoulder depression test (AR 606), and limited grip strength in the left hand (AR 714, 720), among numerous other objective observations and findings. He also administered a number of nerve blocks and injections to relieve Plaintiff's pain. AR 602 [April 2008 lumbar blocks], 606 [May 2009 left stellate ganglion block], 597-98 [July 2010 bilateral transforaminal cervical blocks], 726-27 [August 2010 bilateral cervical transforaminal blocks], 716-17 [September 2013 bilateral cervical transforaminal blocks].

The ALJ's failure to discuss any of Dr. Calvin's physical examinations of Plaintiff in discounting his opinion undermines the ALJ's conclusion that Dr. Calvin's opinion was based solely or primarily on Plaintiff's subjective complaints rather than objective medical findings. Some of Dr. Calvin's medical findings reflect extreme limitations in Plaintiff's range of motion in her neck and cervical spine, as well as a weakened ability to grip with her left hand. See e.g., AR 592, 605-06, 712, 720, 741, 851, 885. These findings may well have been in Dr. Calvin's mind when he opined regarding Plaintiff's fingering and handling restrictions, her inability to reach overhead, and limitations to her ability to twist, stoop, crouch, climb stairs or ladders, and balance, although it is unclear whether findings from before Plaintiff's first or second surgery continued to be valid in 2014.

Ultimately, the ALJ could reasonably have rejected Dr. Calvin's opinion if

---

[15] This tests neurological function. The standing patient is asked to close his or her eyes. A loss of balance is interpreted as a positive Romberg's test. See https://en.wikipedia.org/wiki/Romberg%27s_test.

the doctor had relied heavily on Plaintiff's subjective reports, which the ALJ found not credible, but the ALJ failed to explain why she believed Dr. Calvin had done so. AR 26. This was inadequate, given that Dr. Calvin's long treating history provided him with other information on which he could have relied. Reddick, 157 F.3d at 725 (to reject doctor's opinion, ALJ "must set forth his own interpretations and explain why they, rather than the doctors', are correct") (citation omitted). However, because the Court has determined that the ALJ gave at least one specific and legitimate reason for discounting Dr. Calvin's opinion, the ALJ's error does not justify remand.

> c.     Examining consultant Dr. Yu's 2009 functional limitation assessment does not constitute substantial evidence controverting Dr. Calvin's 2014 assessment.

The ALJ determined that Dr. Yu's 2009 findings did not support Dr. Calvin's 2014 opinion. AR 26. However, Plaintiff's medical conditions changed substantially in the five years between Dr. Yu's and Dr. Calvin's assessments. Indeed, Plaintiff's deteriorating condition warranted a second cervical spine surgery in 2013. Any differences in the limitations assessed by Drs. Yu and Calvin may be attributable to changes in Plaintiff's condition over time. Therefore, inconsistency with Dr. Yu's 2009 opinion does not constitute a "specific and legitimate" reason to discount Dr. Calvin's 2014 opinion.

However, because the Court has found that the ALJ's gave one specific and legitimate reason for discounting Dr. Calvin's testimony, the ALJ did not err in giving more weight to Dr. Yu's opinion.

**B.     The ALJ properly discounted Plaintiff's subjective pain testimony.**

     **1.     Applicable Law.**

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not

1    required to believe every allegation of disabling pain, or else disability benefits

2    would be available for the asking, a result plainly contrary to 42 U.S.C.

3    § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal

4    quotation marks omitted).

5         In evaluating a claimant's subjective symptom testimony, the ALJ engages in

6    a two-step analysis. Lingerfelter, 504 F.3d at 1035-36. "First, the ALJ must

7    determine whether the claimant has presented objective medical evidence of an

8    underlying impairment [that] could reasonably be expected to produce the pain or

9    other symptoms alleged." Id. at 1036. If so, the ALJ may not reject claimant's

10   testimony "simply because there is no showing that the impairment can reasonably

11   produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282

12   (9th Cir. 1996).

13        Second, if the claimant meets the first test, the ALJ may discredit the

14   claimant's subjective symptom testimony only if he makes specific findings that

15   support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).

16   Absent a finding or affirmative evidence of malingering, the ALJ must provide

17   "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81

18   F.3d at 834; Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014). The

19   ALJ must consider a claimant's work record, observations of medical providers and

20   third parties with knowledge of claimant's limitations, aggravating factors,

21   functional restrictions caused by symptoms, effects of medication, and the

22   claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. "Although lack of

23   medical evidence cannot form the sole basis for discounting pain testimony, it is a

24   factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400

25   F.3d 676, 681 (9th Cir. 2005).

26        The ALJ may also use ordinary techniques of credibility evaluation, such as

27   considering the claimant's reputation for lying and inconsistencies in his statements

28   or between his statements and his conduct. Smolen, 80 F.3d at 1284; Thomas, 278

F.3d at 958-59.[16]

## 2. Plaintiff's Testimony and Statements.

Plaintiff testified that a fourteen-pound door fell on her in 2005 and "crushed [her] neck, [and] messed up [her] spine." AR 39. She claimed that her arms "don't work" and that she walks with a limp. Id. She testified that she cannot lift "more than three pounds," and that physical therapy is helping her walk a little more and gain strength in her left arm. AR 40, 43. Plaintiff testified that after her 2007 surgery, she "was losing [her] left arm," that it was "shriveled up to a little nothing, and it was gray." Id. She also testified that the first surgery did not work, that "the whole left side collapsed," and that in 2009, Dr. Calvin recommended that she get another surgery to correct it. AR 41. Instead, Plaintiff decided to try nerve blocks to alleviate the pain. AR 42. When she was not able to handle the pain any longer, Plaintiff agreed to a second surgery in 2013. Plaintiff testified that her second surgery was not successful. She testified that the x-rays of her fusion showed that the plate inserted to straighten her back "leans to the left." Id. She further testified that she hurt her lower back, and that a doctor (presumably Dr. Calvin) told her that she needed further surgery, but that she elected to receive nerve blocks until she could find a new surgeon. AR 43. She testified that she was receiving 18-20 nerve block injections per session, with sessions once a month or bimonthly.[17] AR 45.

---

[16] The Social Security Administration ("SSA") recently published SSR 16-3p, 2016 SSR LEXIS 4, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims. SSR 16-3p eliminates use of the term "credibility" from SSA policy, as the SSA's regulations do not use this term, and clarifies that subjective symptom evaluation is not an examination of a claimant's character. Murphy v. Comm'r of SSA, 2016 U.S. Dist. LEXIS 65189, at *25-26 n.6 (E.D. Tenn. May 18, 2016). SSR 16-3p took effect on March 16, 2016, approximately a year after the ALJ issued his decision on January 23, 2015, and therefore is not applicable to the ALJ's decision in this case. Id.

[17] This testimony is not supported by the medical evidence. The records indicate that Plaintiff did receive nerve block injections numerous times, but that (Cont.)

Regarding her symptoms, Plaintiff testified that her arms are very weak, but that physical therapy has made her able to lift five pounds. AR 43. Therapy once a week and TENS units have been helping. Id. She has regular recurring migraines, muscle spasms, and dizziness when she lifts things or bends. Id. While they are not as bad as they used to be, Plaintiff still suffers from migraines three to five days a week. AR 61. She suffers from seizures that began occurring in June 2014, and she testified that she has had approximately 20 seizures since then. Id. Her first seizure lasted 22 minutes, and those following usually lasted three to seven minutes. AR 51-52. Plaintiff also testified that her symptoms from Reflex Sympathetic Dystrophy Syndrome ("RSD") never resolved. AR 46.

With regard to her daily activities, Plaintiff testified that there is "nothing [she] can do right now," and that she "go[es] from the couch to the bed to the couch to the bed." AR 46. She testified that she is limited in everything she does, including lifting and bending, and that she has to "check [her] surroundings" because of her seizures. AR 49. Her relatives help her clean and wash. Id. Plaintiff testified that her physical therapist limited her to lifting no more than three pounds. Id.

Plaintiff testified that her right arm is better than her left, that she can lift five pounds with her right arm, and that she can "cook a little bit." AR 54. Plaintiff then testified that she has the same level of pain in her left shoulder and arm as her right shoulder and arm. AR 55.

Plaintiff testified that on a typical day, her boyfriend helps her out of bed and helps her dress. AR 57. She makes coffee and lets the dog outside, but she can no

---

she received them far less often than once a month, and received no more than four injections at a time. See AR 602 [April 2008 lumbar blocks], 606 [May 2009 left stellate ganglion block], 597-98 [July 2010 bilateral transforaminal cervical blocks], 726-27 [August 2010 bilateral cervical transforaminal blocks], 716-17 [September 2013 bilateral cervical transforaminal blocks].

longer walk him. Id. She makes her boyfriend lunch, and on good days she can also make him dinner, but that she is unable to cook as often as she used to. Id. She testified that she can no longer clean, garden, or wash her car. Id. She claims that before her second surgery, she had "good days" but now only has "good moments." AR 59. On good days she still experiences pain and had to rest often. AR 60. She can drive for short distances in order to shop for "just the necessities." AR 61.

On January 7, 2013, Plaintiff completed a function report questionnaire. She reported that she has no problems attending to her personal care (bathing, dressing, feeding herself, etc.), she prepares frozen meals but cannot make homemade meals anymore, she cleans her room and does laundry once a week, she drives, she shops every few months, and she attends church. AR 247. She reported that she can walk only three blocks before she has to rest. Id. Plaintiff's mother also prepared a function report. AR 251. She reported that Plaintiff does light housework, does her own laundry, and prepares simple meals. AR 251-52.

**3.     Analysis.**

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible …." AR 25. The ALJ's opinion discussed three reasons for discounting Plaintiff's credibility: (1) lack of objective evidence to support Plaintiff's allegations of disabling pain; (2) activities of daily living inconsistent with her alleged limitations; and (3) evidence of medical improvement.

> a. Medical evidence of improvement undermines Plaintiff's reports of disabling pain and impairment.

In finding Plaintiff's testimony less than credible, the ALJ stated that "in a recent examination on September 28, 2014[18], [Plaintiff] stated that she was sleeping

---

[18] Plaintiff notes that no record indicating improvement exists from this date. (Cont.)

17

better and feeling better. She also stated that her new pain medication was helping. This indicates improvement in her symptoms and lesser severity of her impairments." AR 27, citing AR 1788-1808. Plaintiff contends that this consideration was improper, arguing that the records the ALJ cites do not show the improvement he determined they did, and that "feeling better on one day … hardly provides support for the ALJ's assertion that [Plaintiff] could sustain such full time employment." JS at 18.

The ALJ's conclusion is supported by substantial evidence. Plaintiff's physical therapy notes from August 7, 2014 to September 24, 2014 show progressive improvement of Plaintiff's conditions. On August 7, 2014, Plaintiff complained that her pain was a ten on a ten point scale, that she had constant pain in her neck and back, needed help for all activities of daily living, had constant migraines, and was unable to lift both arms up. AR 1793. Evaluation showed limited range of motion in Plaintiff's neck and shoulders. Id. On August 20, 2014, Plaintiff noted that new medication and physical therapy exercises have been helping with her pain, and reported a five on the pain scale. AR 1789. On August 27, 2014, Plaintiff reported a six on the pain scale, but noted that she continued to feel much improvement in her neck and back pain, and that her treatments were helping. AR 1799. Progress notes indicated that Plaintiff felt relief with therapy, was able to tolerate an increase in exercises, and had improved postural awareness. Id.

On September 3, 2014, Plaintiff reported a four on the pain scale and stated

---

JS at 18. The ALJ cited exhibit 17F (AR 1788-1808) to support his conclusion. This portion of the record contains physical therapy treatment notes taken from numerous appointments with dates from August 7, 2014 to September 24, 2014. The Court assumes the ALJ's citation to September 28, 2014 was just a typographical error, as the range of records as a whole support the ALJ's conclusion of symptom improvement.

that "she is feeling better each day and continues to notice an improvement in overall function…[and] is doing things that she has not done in 8 months such as taking her dog outside." AR 1802. Progress notes indicated that she had increased tolerance to exercises and was able to progress to increased repetitions. Id. The record also indicated improvement to functional independent, reduction in neck pain and migraines, and the ability to lift both arms for grooming and bathing. AR 1803.

On September 11, 2014, Plaintiff reported a three on the pain scale and stated that she has felt a lot of improvement with therapy. AR 1804. Progress notes stated that Plaintiff was "functioning at 80%," and demonstrated improved overall range of motion, strength, and endurance. Id. Plaintiff reported the same pain level and continued improvement on September 18, 2014. AR 1806. On September 24, 2014, Plaintiff reported a three on the pain scale, and that while she was experiencing low back pain, her neck pain had improved and that she was able to lift her arms up more but still had difficulty carrying things. AR 1808.

These records demonstrate that Plaintiff's condition has recently improved over the course of almost two months after her second surgery. The ALJ's conclusion that Plaintiff's condition has improved is a clear and convincing reason to discount her allegations of disabling pain. See Morgan v. Comm'r of SSA, 169 F.3d 595, 599-600 (9th Cir. 1999) (claimant's testimony properly rejected when ALJ noted that medical evidence indicated symptom improvement); Celaya v. Halter, 332 F.3d 1177, 1181 (9th Cir. 2003) (pain complaints properly rejected where the ALJ "reasonably noted" evidence that pain had come under control).

        b.  Plaintiff's daily activities were inconsistent with her claims of disabling pain.

Plaintiff contends that the ALJ improperly considered her ability to perform daily activities in determining her credibility. JS at 17-18. The Court disagrees. There is substantial evidence to support the ALJ's determination that Plaintiff's

daily activities are inconsistent with her testimony regarding the severity of her symptoms.

In finding Plaintiff not fully credible, the ALJ noted as follows:

[Plaintiff] stated that she drives often, albeit for a short distance. However, this is inconsistent with her allegations of severe neck impairment. Furthermore, she stated that she still performs some household chores. In addition, she reported in 2013 that she still does household chores for two hours a week and she goes shopping and to church. Her mother reported in 2013 that she does light housework, her own laundry, and she prepares light meals. Furthermore, she is independent in all of her self-care. This indicates a greater ability to perform tasks.

AR 27.

The ALJ's conclusion is a clear and convincing reason to discount Plaintiff's credibility. Plaintiff's ability to care for her personal needs (AR 243, 252), prepare easy meals (AR 57, 244, 253), do light housework (AR 244, 252), shop for groceries, clothes and other products (AR 61, 245, 254), attend church (AR 246), and drive short distances (AR 61, 245, 254), indicate functioning inconsistent with her allegations of disabling pain. See, e.g., Burch, 400 F.3d at 680 (upholding adverse credibility determination based on claimant's ability to care for personal needs, cook, clean, shop, manage finances, and interact with boyfriend); Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1991) (claimant's ability to "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries … may be seen as inconsistent with the presence of a condition which would preclude all work activity").

Plaintiff contends that her daily activities do not "rise to the level that would

be required for sustaining full time employment" and that therefore the ALJ improperly considered them. JS at 17-18. A plaintiff's daily activities, however, need not rise to the level of full-time employment to detract from the credibility of his or her subjective symptom testimony. Rather, an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." Molina, 674 F.3d at 1104. "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id. at 1113. As discussed above, the ALJ properly determined that Plaintiff's albeit limited daily activities were inconsistent with her testimony regarding the disabling effects of her pain.

The ALJ's two clear and convincing reasons for discounting Plaintiff's credibility are sufficient to support an adverse credibility determination.

c. Some objective evidence is inconsistent with Plaintiff's allegations of disabling symptoms.

Throughout his opinion, the ALJ found that Plaintiff's allegations of severe and disabling impairments were largely unsupported by the objective medical evidence. The ALJ's determinations are generally supported by substantial evidence.

As discussed above, the ALJ cited to numerous imaging studies to show that Plaintiff's December 2013 cervical spine surgery was successful, and that Plaintiff has improved since the surgery "with no objective evidence to support the severity she alleges." AR 26. The imaging studies and records of Plaintiff's ongoing improvement contradict Plaintiff's testimony that her 2013 surgery was unsuccessful and that her pain is disabling. See AR 42.

The ALJ also discounted Plaintiff's allegations regarding the severity of her seizure disorder, noting that while she was diagnosed with seizure disorder in July 2014, "the record does not indicate any objective testing or repeated complaints of

1  seizures to [Plaintiff's] medical providers." AR 26. This conclusion is supported by
2  substantial evidence. Plaintiff testified that she has had over 20 seizures, each
3  lasting anywhere from three to twenty-two minutes. AR 51-52. However, the record
4  indicates only that on June 16, 2014, Plaintiff suffered her first seizure. AR 1155,
5  1186 (treatment notes from Chino Valley Medical Center). Clinicians opined that
6  the seizure was caused by benzodiazepine withdrawal.[19] AR 1090. Afterward,
7  Plaintiff only mentioned seizures during two July 2014 emergency room visits in
8  which she sought treatment for other ailments. AR 972 [July 2, 2014 treatment for
9  left leg pain and seizures], AR 925, 934 [July 23, 2014 treatment for chest pain,
10  anxiety, and panic attacks, in which she later told doctors she had three seizures the
11  previous day, each lasting 1.5 minutes].

12      With regard to Plaintiff's migraines, the ALJ concluded that "there is no
13  indication in the record that this impairment causes a limitation as severe as the
14  claimant alleges." He cited two instances in which Plaintiff  sought emergency
15  treatment in 2013 for chronic headaches. AR 26. This conclusion is not supported
16  by substantial evidence. The Court's review of the record shows that Plaintiff
17  repeatedly sought emergency treatment for headaches/migraines and consistently
18  complained of headaches beginning in January 2009. See e.g., AR 331, 381, 431,
19  418-420, 590, 604, 710, 726, 768, 861-63, 865, 867, 870, 1306, 1481, 1502, 1785.
20  However, any error is harmless because (1) the ALJ gave other clear and
21  convincing reasons for discounting Plaintiff's credibility, and (2) the ALJ
22  adequately accounted for Plaintiff's migraine condition by limiting her to light
23  work, restricting her postural activities, and including limitations on exposure to
24  environmental irritants. See AR 27.

25  _____

26      [19] Benzodiazepine is prescribed for a range of medical uses, including
   seizures, anxiety disorders, panic, agitation, and insomnia. Seizures can be a side
27  effect of withdrawal. See https://en.wikipedia.org/wiki/Benzodiazepine.

28

1      Ultimately, the ALJ did not rely solely on the lack of supporting medical

2   evidence to discount Plaintiff's credibility. As discussed above, the ALJ gave two

3   other clear and convincing reasons to discount Plaintiff's credibility concerning the

4   severity and limiting effects of his pain. The ALJ was permitted to consider the lack

5   of supporting medical evidence as a factor confirming his other reasons. See Burch,

6   400 F.3d at 681; Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot

7   be rejected on the sole ground that it is not fully corroborated by objective medical

8   evidence, the medical evidence is still a relevant factor in determining the severity

9   of the claimant's pain and its disabling effects.") (citation omitted); Social Security

10   Ruling 96-7p (same).

## IV.

## CONCLUSION

13      Based on the foregoing, IT IS ORDERED THAT judgment shall be entered

14   AFFIRMING the decision of the Commissioner denying benefits.

16   DATED: April 3, 2017

                           KAREN E. SCOTT
                           United States Magistrate Judge